[Civ. No. 1569. Fifth Dist., Nov. 1, 1972.]

PAUL S. MOSESIAN et al., Plaintiffs and Respondents, v.
COUNTY OF FRESNO, Defendant and Appellant.

## COUNSEL

Robert M. Wash, County Counsel, James B. Waterman, Deputy County Counsel, and Cyril Viadro for Defendant and Appellant.

Paul S. Mosesian, in pro. per., and R. W. Levy for Plaintiffs and Respondents.

**OPINION**

**BROWN (G. A.), J.**—Plaintiffs and respondents, Paul S. Mosesian, Charles S. Mosesian, Suren P. Mosesian and Marion G. Mosesian, hereinafter referred to as "Mosesians," recovered judgment for $22,575 damages in this action in inverse condemnation against the defendant and appellant County of Fresno.[1]

The county raised a number of affirmative defenses in the trial court, including implied dedication, various statutes of limitation, equitable estoppel and failure to comply with the claim law. The only issue urged by the county for reversal on this appeal is the failure of Mosesians to comply timely with statutory requirements for filing a claim pursuant to Government Code sections 901 and 911.2, the other defenses having been abandoned. We have concluded that the mandatory requirements of the claims statute were not complied with and, accordingly, reverse the judgment.

██   It is settled that the one-year claim provision of Government Code section 911.2[2] applied to and requires the filing of a claim as a condition precedent to an action in inverse condemnation against a county. (Gov. Code, § 945.4; *Bellman* v. *County of Contra Costa* (1960) 54 Cal.2d 363, 369 [5 Cal.Rptr. 692, 353 P.2d 300]; *Dorow* v. *Santa Clara County Flood Control Dist.* (1970) 4 Cal.App.3d 389, 391 [84 Cal.Rptr. 518]; *Bleamaster* v. *County of Los Angeles* (1961) 189 Cal.App.2d 274, 278-279 [11 Cal.Rptr. 214].) Mosesians did not attempt to seek the statutory procedure for court relief set forth in Government Code section 946.6. (See *Ridley* v. *City etc. of San Francisco* (1969) 272 Cal.App.2d 290, 292 [77 Cal.Rptr. 199].)

The issues herein are further narrowed by the fact that Mosesians have not at any time made any contention that the county is estopped to assert the claim statute. (Cf. *Farrell* v. *County of Placer* (1944) 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323]; *Rand* v. *Andreatta* (1964) 60 Cal.2d 846 [36 Cal.Rptr. 846, 389 P.2d 382].) No issue of estoppel is raised in the plead-

---

[1]Mosesians also filed a notice of appeal to raise the issue of inadequacy of damages awarded which has been abandoned.

[2]Government Code section 911.2 provides: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than the 100th day after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than one year after the accrual of the cause of action."

ings or pretrial order nor in the findings or judgment. So far as the record demonstrates, estoppel was not referred to by Mosesians' counsel in his statements to the trial court and it has not been raised as an issue on appeal.

Mosesians relied and continue to rely upon the single position that their cause of action for inverse condemnation did not accrue at a time more than one year before the filing of their claim on February 13, 1970 (Gov. Code, § 901),[3] and therefore their claim was timely. Determination of when the cause of action for inverse condemnation arose and whether the time for filing a claim was postponed will be dispositive of the case.

The 3.01 acres of land involved in this litigation are used as a ponding area as part of a residential subdivision drainage plan imposed by the county as a condition to approval of a subdivision map.

On April 2, 1958, Mosesians sold approximately 135 acres of land suitable for subdivision development to Joseph and Priscilla Romano and took back a note representing the balance due on the sale, secured by a deed of trust on the property sold.

Romano and successor corporations proceeded to develop the property. They filed a tract map which was properly approved by everyone except Mosesians, the holders of the note and deed of trust. As a condition of approval of the subdivision and to provide for drainage, the county imposed a requirement that a suitable settlement pond area be provided and constructed in a manner approved by the county.

Under a contract let by the county, the 3.01-acre settlement pond was excavated, accompanying operating facilities were installed, and the entire area was enclosed with a 6-foot chain link fence. The excavation and work of improvement were completed and notice of completion was recorded on December 11, 1959. In this inverse condemnation case the date of valuation was determined by the court to be December 11, 1959, and on the damage issue the jury was so instructed.

Since December 11, 1959, the area has been in the sole and exclusive

[3]Government Code section 901 provides: "For the purpose of computing the time limits prescribed by Sections 911.2, 911.4, 912, and 945.6, the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon."

possession of the county and used and maintained by the county as a ponding and settlement basin from that day to the date the claim was filed on February 13, 1970, and thereafter. The claim was rejected on February 17, 1970, and the action herein was filed on March 9, 1970, a period in excess of 10 years from the date of the completion of the project. However, Mosesians, as holders of the deed of trust, did not consent to the construction of the ponding basin and the county in fact did not have title thereto.

In November 1965, upon default by Romanos, Mosesians foreclosed their deed of trust and reacquired the property. They have been the owners from that date through the date they filed their claim herein, a period in excess of four years.

The county has performed routine maintenance on the fence and pond during the entire period. It increased the depth of the ponding area in September 1969 by the removal of 8,500 cubic yards of dirt and subsequently in March 1970 by the removal of 4,000 cubic yards of soil. The amount of area actually occupied by the county has not changed or increased since the original completion on December 11, 1959, nor has Mosesians' adjacent land been affected by the additional work done.

Mosesians were aware of the construction and completion of the pond in 1959 and have seen it periodically since. Suren P. Mosesian testified that about the time it was completed he asked Romano about it and Romano told him it was a temporary pond. In late 1959 or early 1960 Suren P. Mosesian also asked his attorney to check into it and the attorney told him that he had been informed by Romano the ponding area was temporary and when a metropolitan flood control district came into the area the pond would be removed.

Romano testified that he understood from the county that the pond would be temporary.[4]

It is undisputed that none of the plaintiffs had any contact with any representative of the county until June 1968, at which time Charles S. Mosesian and Paul S. Mosesian met with Deputy County Counsel Viau at the latter's office. Charles testified that Viau told him the county's possession was temporary.[5]

---

[4] "A. But it's still a temporary pond. We discussed many times with them to make it a permanent pond and they said they couldn't take it as a permanent pond, this had to be a temporary pond because the Metropolitan Flood Control was not in the area and *they didn't think* it would be—the permanent pond would be there. It would be somewhere else." (Italics added.)

[5] "A. He responded that we still maintained a fee title and you asked him—you told him they have left us with nothing, that we have no possible use for the property and Mr. Viau explained that this pond was not adequate for the area when the

Viau denied he ever told any of the plaintiffs the county wanted only temporary possession or that the land would be returned to them.

On January 8, 1969, Paul S. Mosesian, one of the plaintiffs and counsel for plaintiffs, wrote a letter to the deputy county counsel, part of which reads: "This letter is to *confirm our discussion on June 19, 1968* in the Planning Department office regarding the above mentioned ponding site. *As I informed you on that date, in my opinion the County has inversely condemned the subject three acres* on which the ponding basin has been dug and around which a fence has been constructed. As the subject site, owned by the undersigned and others, is going to be developed in the immediate future, this letter is written so that if this matter can be compromised without need of a lawsuit, that the same be done forthwith." (Italics added.)

On January 10, 1969, the county responded by letter in which the deputy county counsel advised Paul S. Mosesian that the county has claimed title to an easement in the property since December 11, 1959, and that "In our opinion this matter cannot be compromised. . . ."

On January 20, 1969, Mosesians filed a suit in inverse condemnation against the county, being action No. 139878, for damages for the ponding area in question. That case went to judgment and recovery was denied to Mosesians because they had not filed a claim.

Among other things, the complaint filed by Mosesians in the former action alleges: ". . . and that said ponding basin existed and does continue to exist to this date, and that plaintiffs are informed and believe upon such information and belief allege that such ponding basin is permanent and not temporary." And they further allege: ". . . and the

---

Fresno Metropolitan Flood Control came out in the area, that the pond was not adequate and that it was a temporary use and that at a later date, when the Fresno Metropolitan Flood Control came in the area, a permanent and a larger pond would have to be designated.

"Q. Did he say anything about getting the land back at that time?

"A. Yes. He told us *if they decided on a different site,* that we would be entitled to take our land back.

". . . . . . . . . . . . . . . . . . .

"Q. What did Mr. Viau represent to you as far as paying for the land or returning—

". . . . . . . . . . . . . . . . . .

"Q. —or returning it? What did Mr. Viau say?

"A. He told us that this pond was originally set up to be a temporary pond and that at a later date, there was a possibility that the land would be returned to us. The use of the land would be returned to us." (Italics added.)

aforesaid property of plaintiffs has been permanently taken for public use by defendants without payment of consideration to plaintiffs therefor, . . .'"

In the above referred to former action between these parties (action No. 139878), Mosesians took the position that no claim had to be filed in an inverse condemnation action. They did not contend, as they do now, that the cause of action did not arise until Mosesians knew whether the taking was permanent or temporary. Significantly, with reference to the issue of the accrual of the cause of action, neither the memorandum of indicated decision nor the judgment in that former action makes any finding or adjudication on the question of whether the taking was permanent as distinguished from temporary.[6]

All of the issues raised in the former action were decided adverse to the county and in favor of Mosesians except that the judgment stated: "That plaintiffs take nothing by reason of their Complaint, solely because they have not filed a Claim as required by Sections 905, et seq. of the Government Code." The memorandum of indicated judgment was signed on February 4, 1970, and filed on February 5. Mosesians filed a claim on February 10, 1970, which was rejected by the county on February 17. This suit followed on March 9, 1970.

Mosesians correctly, we believe, have taken the position in the current proceedings that the court in the prior case made no determination as to when the cause of action arose or the timeliness of the claim that may be filed. On the claim issue, the only determination that was made was that a claim must be timely filed before an action in inverse condemnation may be maintained.

In the proceedings at bench the court found that Mosesians' cause of action accrued on or about February 4, 1970, and further found: "That defendants, since on or about December 11, 1959 have constructed and maintained a ponding basin site on the above described real property, and that said ponding basin site existed and does continue to exist to this date; that as a result of said construction, plaintiffs' damages have been indeterminable to and until the filing of that document entitled Memorandum

---

[6]In that action one of the county's claims was that it had title by adverse possession to an easement rather than the fee interest and, since it claimed an easement only, it did not have to pay taxes to acquire title by adverse possession. In connection with that contention, the memorandum of indicated judgment does say: "From their own pleading and evidence it is clear, however, that a permanent improvement was placed on the land claimed at the time by the County to be its land. The County's possession is total and exclusive. All of the land involved is devoted to a permanent public improvement."

of Indicated Judgment, in Superior Court action # 139 878 between these same parties on or about February 4, 1970. That until aforesaid Memorandum of Indicated Judgment was filed, defendants have maintained that aforesaid ponding basin site was temporary and was based upon an easement by prescription and not upon a taking of plaintiffs' fee interest in and to the above described real property; that in said Memorandum of Indicated Judgment, the Superior Court rejected said argument that said County had only an easement in and to said real property, and instead found that the possession by the County of Fresno was total and exclusive and that the use of the real property involved is and was devoted to a permanent public improvement; that until said finding on or about February 4, 1970, plaintiffs could not make any reasonable determination of what damage they had suffered, since the County at all times represented to plaintiffs that at such time as a permanent location was found for a ponding site, that plaintiffs' aforesaid real property would be returned to plaintiffs for plaintiffs' use."

■ The one-year time limit within which a claim must be filed commences to run as of the date the cause of action accrues (Gov. Code, § 901). A cause of action normally accrues when under the substantive law the wrongful act is done and the liability or obligation arises, that is, when action may be brought. (*Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800].)

The evidence is uncontroverted that objectively the occupancy and use of the 3.01 acres in question was total, complete and exclusive from December 11, 1959, forward. Under any view, an action in inverse condemnation could have been maintained by proper parties plaintiff as of that time. As the Supreme Court instructed in *Powers Farms* v. *Consolidated Irr. Dist.* (1941) 19 Cal.2d 123, 129 [119 P.2d 717]: "Where the time and extent of injury are uncertain, a statutory period of limitation begins to run when the fact that damage is occurring becomes apparent and discoverable, even though the extent of the damage may still be unknown. [Citation.]" The proper inquiry is, notwithstanding the accrual of the cause of action on December 11, 1959, was the time within which a claim could have been filed postponed. (*Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282, 294 [74 Cal.Rptr. 521, 449 P.2d 737].)

Because of their position as beneficiaries under the deed of trust, we assume Mosesians alone could not have maintained an action at the time of completion of the improvement on December 11, 1959. However, title was revested in them after foreclosure in November of 1965 and that disability was thereby removed.

Mosesians rely upon the finding of the court hereinabove quoted that until the decision in the former action (February 4, 1970) was known, they subjectively did not know whether the taking was permanent or temporary or was an easement or fee interest and therefore the cause of action arose as of that time. In support of this proposition they cite *Pierpont Inn, Inc.* v. *State of California, supra,* 70 Cal.2d 282, and the cases therein referred to.

The amorphous concept of when a cause of action arises in an inverse condemnation claim has been treated in a number of cases. Nothwithstanding some inconsistencies in the language of the cases, each makes clear that the time is not limitless. None supports Mosesians' contention that though a taking is objectively total and the improvement complete, the time for filing a claim is postponed until the claimant is subjectively convinced the taking is permanent rather than temporary. None suggests, as Mosesians contend herein, that there must be a judicial determination of permanency before the time within which a claim must be filed starts to run. None suggests that an uncertainty with respect to whether a fee or easement is being claimed by the public agency justifies postponement of filing a claim.

*Pierpont Inn, Inc.* v. *State of California, supra,* 70 Cal.2d 282, involved an inverse condemnation action against the state for property taken for freeway purposes. A claim was filed within the statutory period after completion of the project but not within the required period if the period started to run from the time the work of improvement commenced. The court held the time for filing the claim commenced to run from the date the work was completed, not from the initial entry. (*Natural Soda Prod. Co.* v. *City of L. A.* (1943) 23 Cal.2d 193 [143 P.2d 12]; *Williams* v. *Southern Pacific R.R. Co.* (1907) 150 Cal. 624 [89 P. 599]; *Robinson* v. *Southern Cal. Ry. Co.* (1900) 129 Cal. 8 [61 P. 947]; *Ocean Shore R.R. Co.* v. *City of Santa Cruz* (1961) 198 Cal.App.2d 267 [17 Cal.Rptr. 892]; *Haigh* v. *City of Los Angeles* (1934) 139 Cal.App. 595 [34 P.2d 779].)

In *Bellman* v. *County of Contra Costa, supra,* 54 Cal.2d 363, a claim was filed in 1957 seeking damages for the continuing subsidence of plaintiffs' property resulting from a removal of lateral and subjacent support by the county during a road-widening project that was completed in 1952. The first subsidence started in 1954 and was continuing at the time of trial. In that case the court said: "In the circumstances here alleged, a cause of action for destruction of the lateral support emanates not from the excavation standing alone, but from the subsidence. [Citations.] Further, the rule is that a new and separate cause of action arises with each new subsidence,

with any applicable limitations statute running separately for each separate subsidence. [Citations.] Therefore, the fairest and most workable rule with respect to the filing of claims and as to the items of damage for which recovery may be had once a claim has been filed appears to be that which governs in the pension cases, viz., plaintiff may recover on those items of damage which accrued within the applicable time period (here, one year) prior to the date of filing of the required claim and also, without the necessity of filing successive claims, on such items as accrue after that date. [Citation.]" (At p. 369.) (Cf. *Powers Farms* v. *Consolidated Irr. Dist., supra,* 19 Cal.2d 123, 129.)

Mosesians can derive little support from these authorities. The taking and damage here was total and complete as of December 11, 1959. Although after that date there was routine maintenance and deepening of the existing ponding area, no additional area was taken. The county's occupancy did not constitute a continuing or repeated invasion or injury to Mosesians' adjacent land, as in *Bellman, supra,* nor did the subsequent work render incomplete the taking and completion of the improvement as of December 11, 1959. Resurfacing a freeway or adding an additional story to an existing building are apt similes to the deepening of the pond. These acts cannot be reasonably construed as constituting a continuing process resulting in additional damages to the landowner. Since the taking and damage was complete as of December 11, 1959, the trial court properly fixed that date for valuation.

■ Further, assuming the law sanctions postponement of filing a claim until the claimant subjectively knows the taking is permanent, the evidence does not support the trial court's finding that the cause of action arose on February 4, 1970, because the plaintiffs did not know until that date that the taking was permanent rather than temporary. (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54]; *Estate of Welch* (1954) 43 Cal.2d 173 [272 P.2d 512]; *Estate of Lingenfelter* (1952) 38 Cal.2d 571 [241 P.2d 990].)

As we have said, the point of whether the taking was permanent or temporary in the context of when the cause of action arose was not an issue in nor was it determined by the former action, though there was an issue of whether the taking was of an easement or fee interest. The court held it was a permanent fee (see fn. 6).

There was no direct contact with any representative from the county at any time before June 1968. At that time there was a meeting at the county counsel's office. As of then the improvement had been in place and un-

changed for approximately eight and one-half years, and as of that time Mosesians had been revested with title for over two and one-half years.

The testimony of Charles S. Mosesian (see fn. 5) would reasonably indicate that Mosesians had a "possibility" of getting the property back "if" the Fresno Metropolitan Flood Control District came into the area and decided on a different site; that is, Mosesians would get it back if the county abandoned the property. Nevertheless, giving his testimony its most favorable interpretation, as we are bound to do under the substantial evidence rule (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]), it is probably sufficient to support a finding that as of the date of the meeting—June 1968—Mosesians believed the possession by the county was temporary.

Nothwithstanding such belief as of June 1968, however, the evidence is conclusive that Mosesians knew they had a cause of action for permanent taking of the property as of January 1969.

Paul S. Mosesian's letter of January 8, 1969, sets forth that he informed the county counsel in June that, in his opinion, the county had inversely condemned the property, and no reasonable construction can be put upon that written document other than at least as of January 8, 1969, Mosesians knew that they had a cause of action for inverse condemnation against the county. On January 10, 1969, the county counsel by letter said that the county claimed the property and that: "In our opinion this matter cannot be compromised. . . ." On January 20, 1969, Mosesians filed their complaint in action No. 139878, in which they expressly alleged that the taking was permanent. As their knowledge of the permanence of the taking was in excess of one year prior to filing of the claim in February 1970, plaintiffs' claim is barred by the claims statute even if it be assumed the law permits postponement until the claimant subjectively knows the taking is permanent.

While the result we reach may appear harsh in this case, the solution lies with the Legislature rather than with the court. The 1963 California Tort Claims Act was enacted after careful study by the California Law Revision Commission and the Legislature. It is not in the province of this court under the guise of judicial construction to carve out exceptions to express provisions of the act which would abrogate a part of this legislative enactment by a coequal branch of our tripartite system of government. That is within the authority and function of the Legislature, not the courts.

The historically sound doctrines of judicial restraint and separation of

powers must be preserved and strengthened. The further erosion of these peculiarly American concepts of government cannot be justified by efforts to achieve a desired result in a particular case. However pleasing such distortions may be to a winning litigant, the long-term effect on our judicial system and governmental structure of persistently ignoring those basic doctrines will be their ultimate destruction.

The judgment is reversed with direction to enter judgment for the defendant.

Gargano, J., concurred. Stone, P. J., concurred in the result.

Respondents' petition for a hearing by the Supreme Court was denied December 29, 1972.