[L.A. No. 30285. In Bank. Mar. 11, 1975.]

ROSS M. MEHL et al., Cross-complainants and Respondents, v.
THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Cross-defendant and Appellant.

**COUNSEL**

Harry S. Fenton, Joseph A. Montoya, Robert L. Meyer, Hugh R. Williams and Robert V. Cohune for Cross-defendant and Appellant.

Barrick, Poole & Olson, Oliver, Stoever & Laskin and Thomas W. Stoever for Cross-complainants and Respondents.

## OPINION

**MOSK, J.**—In this condemnation action, the State of California appeals from a judgment entered against it on the cross-complaint of Ross and Marylyne Mehl for inverse condemnation. The Court of Appeal, Second Appellate District, Division Two, affirmed the trial court's judgment on all issues except damages, and it remanded the case for a retrial on that issue. We granted a hearing because of our concern with the problem of damages. Since we have concluded that the Court of Appeal correctly treats and disposes of questions which do not relate to damages, we have adopted its opinion as the opinion of this court on those issues with only a few alterations, and have articulated our own views on the matter of damages.[1]

[] In 1964 the Mehls purchased a 5.85-acre unimproved parcel of property in the City of Industry for $82,100. Although a large natural drainage swale ran north through the middle of the property the parcel was considered suitable for future industrial development, and the Mehls planned to hold it for investment purposes. In 1965 the state began to construct Pomona Freeway on property immediately adjacent to and south of the Mehl property. To accommodate the natural south-north drainage flow through the swale, which otherwise would be blocked by the east-west freeway, the state in 1965 installed under the freeway a double three-foot by eight-foot concrete box culvert which channeled the freeway runoff and the natural drainage flow onto the Mehl property. Construction of the culvert was completed during 1965, and the freeway was opened to traffic in 1967. In February 1969 the County of Los Angeles condemned a drainage easement down the middle of the Mehl property and on its easement constructed a dog-leg, dirt ditch, which carried the drainage flow from the freeway culvert to a county storm drain north of the Mehl property.

After the county filed an action to determine the amount of compensation payable for its drainage easement on the Mehl property, the Mehls cross-complained against the state in inverse condemnation for partial loss of their property as a result of the freeway construction. The actions were tried jointly but the trial was divided into two parts, the first for

---

[1]Brackets together, in this manner [] *without enclosing material,* are used to indicate deletions from the opinion of the Court of Appeal; brackets *enclosing material* (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks, which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted.

court consideration of the state's affirmative legal defenses, the second for jury determination of the value of the interests taken. In rejecting the state's affirmative legal defenses, the court ruled the cross-complaint was not barred by the statute of limitations or by the claims statute, and it denied the state's claim of estoppel by deed. The jury then fixed the value of the county's easement at $14,100 and the value of the easement's severance damage to the remainder of the Mehl property at $8,775 (together totaling $22,875, plus $2,739.36 interest), and it fixed the value of what had been taken by the state's freeway construction at $82,745. In 1972 the court entered judgment for these amounts, plus interest on the state award at 7 percent from June 30, 1965, plus $20,350 attorneys' fees and costs. In return for this total recovery of approximately $170,000, the state received the right to discharge water on the property in excess of the amount that formerly drained naturally onto the property, and the county acquired a drainage easement across a portion of the property; the Mehls of course retained the property itself and all other incidents of ownership in the property. The county is not a party to this appeal, and we are concerned solely with the Mehls' judgment against the state on the cross-complaint.

The state argues the court should have found in its favor on the issue of estoppel by deed, on the statute of limitations, and on the claims statute; additionally, it contends the jury's verdict should be reversed for insufficiency of evidence and [] [other errors].

■ *Estoppel by Deed.* The Mehls purchased their 5.85-acre parcel of property from the Ward family in 1964. The Wards originally owned 8.20 acres, but in 1959 they sold the southerly 2.35 acres to the state for $19,000 as right-of-way for the planned freeway. The deed of sale from the Wards to the state provided: "The grantor understands that the present intention of the grantee is to construct and maintain a public highway on the land herein conveyed in fee and the grantor, for himself, his successors and assigns, hereby waives any claims for any and all damages to grantor's remaining property contiguous to the property herein conveyed by reason of the location, construction, landscaping or maintenance of said highway." According to the state, the Ward deed estops the Mehls, successors in interest to the Wards, from claiming damages against the state.

The trial court concluded there was no estoppel, and we agree. ■ Estoppel is a question of fact, and the determination of the trier of fact is binding on appeal unless the contrary conclusion is the

only one that can reasonably be drawn from the evidence. (*Albers* v. *County of Los Angeles,* 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129].) ■ The court was required to determine what the parties intended by the waiver clause in the deed. (*Isenberg* v. *Salyer,* 62 Cal.App.2d 938, 941-942 [145 P.2d 691].) On this subject the court found: the waiver clause was a standard clause used by the state in all similar right-of-way acquisitions; the state did not disclose to the Wards its intention to construct as part of the freeway the particular drainage system that was later installed; the Wards did not know a drainage system discharging water onto their property would be constructed as part of the freeway; final plans for the freeway drainage system were not completed until 1964; the Wards did not intend to waive the claim for damages later asserted by the Mehls. The testimony of previous owner Clifford Ward, of state right-of-way agent Cecil Rumbeck, and of state engineer Wallace Griffin supports the court's findings, and the findings buttress the court's conclusion that the Mehls' claim had not been waived.

■ Whenever an owner of land has consented by deed to the taking of his property for public use, it is assumed he has been compensated for all reasonably foreseeable damages to the property that could result from the taking and public use. (*Reinking* v. *County of Orange,* 9 Cal.App.3d 1024, 1030 [88 Cal.Rptr. 695].) ■ The state argues the court should have made a specific finding on the reasonable foreseeability at the time of the Ward deed of the damages later claimed by the Mehls. At the trial the state requested findings, but it did not request any specific finding on foreseeability nor did it object to the proposed findings for lack of a specific finding on foreseeability. A specific finding on each material issue is unnecessary when the findings as a whole clearly show the court's views on all material issues. (*Kaneda* v. *Kaneda,* 235 Cal.App.2d 404, 413 [45 Cal.Rptr. 437].) Here, the court found that plans for a drainage system were not complete in 1959 and that the Wards had not been told of, did not know about, and had not intended to waive the damages that might result from the subsequent construction of a drainage system; from such findings it is readily inferable that the court considered the damages resulting from the subsequent construction of a drainage system as not reasonably foreseeable.

■ *Statute of Limitations and Claims Statute.* The state next contends the Mehls were foreclosed from claiming damages by their failure to comply with the one-year claims statute (Gov. Code, § 911.2) and with the three-year statute of limitations (Code Civ. Proc., § 338, subd. 2).

They filed their claim against the state in November 1969, and their cross-complaint in May 1970.

On this point the state's contention is not persuasive. The taking asserted in this action consists of the channeling of a flow of extra water onto the Mehl property. [In essence, the Mehls asserted that the state had appropriated a drainage easement over their property.] The date the taking occurred is not necessarily the date on which the period of limitation and of claims started to run. [] [Rather, the period begins to run when the damage is sufficiently appreciable to a reasonable man. (*Oakes* v. *McCarthy* (1968) 267 Cal.App.2d 231, 255 [73 Cal.Rptr. 127].)[2]] The state argues the taking became appreciable when freeway drainage construction was completed in 1965, or at the latest when a frontage road providing renewed access to the Mehl property was opened in 1966. But the court found that the Mehls first became aware of the drainage system in 1969, and that prior to that time they had been unable to accurately determine the nature and extent of the taking. [] [This finding was supported by evidence that in] February 1969 the county advised Mehl it intended to construct a drainage system across the property to handle the flow of water from the freeway culvert. Mehl then visited the property, inspected the state's culvert, and observed evidence of drainage flow onto his property during recent heavy rains. [] [Under these circumstances, the trial court did not err in concluding] that the claim and the cross-complaint had been timely filed.[3]

■ *Evidence* []. The state contends it took none of the Mehl property, [and] that the county bears sole responsibility and liability for the drainage system constructed on the Mehl property. []

We disagree with the state's assessment of the evidence of taking. The Mehls presented evidence that the freeway construction directed more drainage flow onto the property at a higher speed in a more concentrated location than had been the case before the construction of the freeway,

[2]Cases cited by the state for the proposition that a cause of action for a taking of property arises upon completion of the project causing the injury (*Williams* v. *Southern Pacific R.R. Co.* (1907) 150 Cal. 624, 627 [89 P. 599]) or when the compensable interference is objectively total (*Mosesian* v. *County of Fresno* (1972) 28 Cal.App.3d 493, 500 et seq. [104 Cal.Rptr. 655]) are distinguishable. In those cases there was a direct physical invasion of the landowner's property when the project was built, and the fact of taking was immediately apparent.]

[3]In view of our conclusion we are not called upon to discuss a rule stated in some cases (e.g., *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 373-375 [28 Cal.Rptr. 357]) not cited by the parties or relied upon by the trial court, that a five-year statute of limitations governs actions on inverse condemnation.]

[that the condemnation of the easement by the county was necessitated by the construction of the freeway, that the division of the property by the county's drainage ditch diminished its value, and that the change in drainage pattern substantially increased the cost of developing the property]. This evidence supports the finding of a taking of property as a consequence of the freeway construction, a taking that damaged the value of the Mehl property to some extent.[4] []

■ [*Damages*. However, we agree with the state's contention that errors which occurred in the trial on the issue of damages require reversal of the judgment.

The state was, under the evidence, responsible for causing an increased amount of water to flow over the Mehl property by its construction of the freeway, but it was not responsible for natural drainage flow, nor for ill-advised steps which the county may have taken to deal with the increased flow. The county chose to build an open ditch across the middle of the property, and there was evidence that some of the overall damage was caused by factors attributable to the manner in which the ditch was constructed. For example, the alignment of the ditch left irregularly shaped parcels on either side, severely diminishing the value of the westerly parcel. Yet the evidence indicated that the county could have located its drainage facilities along a route which would not have resulted in parcels of such irregular shape.

In these circumstances, it was essential to differentiate between the responsibility of the state and the county for the overall damage. For the most part, the evidence failed to make this distinction clear. The only testimony from which the jury could make a rational apportionment was that of William Holabird, an appraisal expert who testified on behalf of the Mehls. He estimated that the state's share of the total damages was 60 to 80 percent. Holabird's testimony was admitted over objection that he had not previously disclosed his opinion of the damages attributable to the state, as distinguished from the county's liability, despite a pretrial discovery order that he do so, and that without advance notice as to the theory upon which he would rely, the state was at a disadvantage in cross-examination. A motion to strike the apportionment testimony was denied. For the reasons urged, the admission of Holabird's apportion-

[4The state's assertion that the trial court did not find that a "taking" had occurred is without merit. It stated in its findings that the Mehls were not aware of the property "taken" until February 1969, and its judgment gave the state the right to discharge drainage waters on the land from the culvert. In our view, these statements amount to a determination that the state had taken a drainage easement over the Mehl property.]

ment testimony was erroneous. (See *United States* v. *Meyer* (9th Cir. 1968) 398 F.2d 66, 69-70; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 928-930 [101 Cal.Rptr. 568, 496 P.2d 480]; *Swartzman* v. *Superior Court* (1964) 231 Cal.App.2d 195, 203-205 [41 Cal.Rptr. 721].)[5] In view of the confusion in the evidence on the issue of apportionment[6] and the fact that only Holabird expressed an unequivocal opinion on that issue, we have no doubt that the error was prejudicial.[7]

██ Since the judgment must be reversed for a retrial of the damages, we discuss some of the issues raised by the parties which might arise on retrial. The trial court instructed the jury to evaluate the property as of September 21, 1971, the date of trial. In *Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282, 296 et seq. [74 Cal.Rptr. 521, 449 P.2d 737], an action in inverse condemnation, we held that the proper date for valuation of the property was the time of trial. We relied upon section 1249 of the Code of Civil Procedure, which provides that if a condemnation action is not tried within one year of the date the action is commenced, the appropriate valuation date is the time of trial, unless the delay was caused by the defendant.

It is true, as the state contends, that in *Pierpont* the government had "full knowledge of respondent's rights in the premises" when it took his property without instituting condemnation proceedings (70 Cal.2d at p. 297), and that in the present case there was no determination that the state recognized it was taking a drainage easement at the time it constructed the freeway.[8] Nevertheless, we do not deem the distinction to be significant. The underlying rationale of *Pierpont* is that if the landowner is not at fault in failing to promptly pursue his remedy in

---

[5]The Mehls assert that Holabird's opinion of apportionment was not formulated until he had testified for several days on direct and cross-examination and that, therefore, the failure to disclose the opinion in advance of trial was not erroneous. This assertion is inconsistent with a pretrial conference order which directed Holabird to make a determination of the state's liability and provide the state with a copy of his opinion, and with a statement in the final pretrial order that the Mehls would determine whether Holabird intended to testify as to the state's separate liability, and would notify the state if such testimony would be offered.

[6]The confusion of the jury on this question is demonstrated by the fact that, in awarding damages, it merely subtracted a preliminary appraisal of the land taken by the county ($22,875), which itself included severance damages, from Holabird's testimony as to the total damages ($105,620), to reach what in effect amounted to severance damages for the state's taking ($82,745).

[7]The error was aggravated by the fact that the trial court gave only general instructions on proximate cause.

[8]In *Pierpont* we expressly declined to consider whether an evaluation date earlier than the time of trial might be appropriate if the government had acted without knowledge of an adverse claim of ownership. (70 Cal.2d at p. 298.)

inverse condemnation, he should enjoy the benefit of any increase in the value of his land at the time of trial. Since the trial court determined in the present case that the Mehls were unable to determine the nature and extent of the taking before 1969, it was not erroneous to evaluate the property as of the time of trial.

■ However, the court should not have awarded interest from 1965, when the freeway was constructed. The Mehls were not aware of any damage to their property from the state's activities until 1969, and the county's condemnation of the easement did not occur until then. In these circumstances, since the taking did not become appreciable until 1969, interest should have been awarded from that date rather than 1965. (Cf. *City of Los Angeles* v. *Ricards* (1973) 10 Cal.3d 385, 389 [110 Cal.Rptr. 489, 515 P.2d 585]; Code Civ. Proc., § 1255b, subd. (a)(2).)

The trial court correctly awarded attorneys' fees and costs to the Mehls pursuant to section 1246.3 of the Code of Civil Procedure, and the Mehls are entitled to their trial and appeal costs.

The judgment is reversed and remanded for a new trial as to damages and affirmed in all other respects.]

Sullivan, Acting C. J., McComb, J., Tobriner, J., Clark, J., Richardson, J., and Whelan, J.,* concurred.

Respondents' petition for a rehearing was denied April 24, 1975. Wright, C. J., did not participate therein.

---

*Retired Associate Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.