Filed 9/28/15  Douglas v. West Bay Sanitary Dist. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHAEL DOUGLAS, Individually and as Trustee, etc., et. al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> WEST BAY SANITARY DISTRICT, <br><br>     Defendant and Respondent. | A140314 <br><br> (San Mateo County <br> Super. Ct. No. CIV 484299) |

Plaintiffs Michael and Lisa Douglas, individually and as trustees of the Douglas Family Trust Dated August 18, 2006, appeal from the dismissal of their action against respondent West Bay Sanitary District (West Bay).  The dismissal was entered after the trial court sustained West Bay's demurrer to the three causes of action alleged against it. The Douglases contend that one of those causes, for inverse condemnation, was improperly dismissed as time-barred and that the other two causes, for declaratory and injunctive relief, were improperly dismissed as "duplicative" of the inverse-condemnation claim.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

We begin by summarizing the facts.  Under the applicable standard for reviewing a dismissal based on the sustaining of a demurrer, we accept as true all factual allegations of the operative complaint and facts that "may logically be inferred" from those allegations.  (*Branson v. Martin* (1997) 56 Cal.App.4th 300, 302.)

1

The Douglases own property in Portola Valley.  In July 2001, the Town of Portola Valley (Town) imposed a condition in a Conditional Use Permit (CUP) requiring them to connect to a sewer whenever one became " 'available in Portola Road in front of the subject property.' "  The Town represented to the Douglases that the sewer condition would be triggered only if the Town "constructed and provided a sewer system for all of the residents of Portola Valley."

Sometime later, "a private sewer pipe [was] constructed pursuant to" an August 14, 2006 reimbursement agreement between West Bay and a group of developers, which "was entered into by way of an unnoticed resolution by the District Board of . . . West Bay" on or around the same day.[1]  This agreement allegedly "was designed and created to compel the Douglas[es] to be forced to fund private sewer improvements" for the developers and was "entered . . . with full knowledge and intent that such action[] would substantially impair the value of the [Douglases'] property and cause [them] extreme economic harm."

In January 2008, West Bay sent a letter to the Douglases demanding approximately $220,000 for the sewer's construction.  The Douglases apparently refused to pay, and the Town eventually revoked the CUP, effective March 2009.  In April 2009, the Douglases "proceeded to apply for and tender the necessary sewer connection and permit fees to . . . West Bay," but West Bay refused to accept the application and fees unless the Douglases paid $409,000 to connect to the sewer.  West Bay's actions allegedly caused the Douglases' property to became "substantially undervalued."

The original complaint does not appear in the record before us, although West Bay represents that it was filed in May 2009 against the Town only.  The first amended

_____

[1] Relying on various documents of which the trial court took judicial notice, West Bay claims that the sewer was already under construction as of June 2004, "became available for connection in May 2005," and was "accepted . . . as public property" by West Bay the same month.  The Douglases argue that these documents were improperly judicially noticed.  We need not resolve the dispute because any facts dependent upon the judicially noticed documents are unnecessary to our decision, and we rely only on the facts alleged in the first amended complaint (the operative version).

2

complaint was filed in March 2011 and named as defendants West Bay, the Town, and the developers. The Douglases alleged three causes of action against West Bay: inverse condemnation, declaratory relief, and injunctive relief. West Bay demurred on various grounds, including, as to all three claims, the statute of limitations and failure to state a claim. The trial court sustained the demurrer without leave to amend and dismissed the claims against West Bay.[2]

## II.
### DISCUSSION

#### A.    *Standard of Review.*

We review de novo an order sustaining a demurrer. (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 637.) Regardless of the label given to a cause of action, "[o]ur task is to determine whether the pleaded facts state a cause of action on any available legal theory." (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908.) "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions[,] or conclusions of law." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) " 'We do not review the reasons for the trial court's ruling; if it is correct on any theory, even one not mentioned by the court, and even if the court made its ruling for the wrong reason, it will be affirmed.' " (*Curcini*, at p. 637.) But "[a]lthough our review . . . is de novo, it is limited to issues which have been adequately raised and supported in [the] plaintiffs' brief." (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [addressing order granting summary adjudication].)

Where, as here, a trial court sustains a demurrer without leave to amend, we determine whether the court abused its discretion in doing so. (*Davis v. Southern California Edison Co.* (2015) 236 Cal.App.4th 619, 635.) If " ' "there is a reasonable possibility that the defect can be cured by amendment . . . , the trial court has abused its

---

[2] The Town's demurrer to all the causes of action against it was also sustained without leave to amend, a ruling the Douglases do not challenge.

3

discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff[s].” ’ ”  (*Ibid.*)

B.      *The Inverse-condemnation Cause of Action Was Properly Dismissed Because It Is Time-barred.*

The Douglases claim the trial court erred in ruling that the inverse-condemnation claim was time-barred because the court used both the wrong limitations period and the wrong triggering event for its initiation.  They do not, however, offer any valid theory under which the claim is *not* time-barred.  We conclude the court properly sustained the demurrer to this cause of action.

In demurring to the inverse-condemnation claim on the basis of the statute of limitations, West Bay argued that the reimbursement agreement constituted a regulatory action and that the applicable limitations period was 90 days under Code of Civil Procedure section 1094.6.[3]  In response, the Douglases argued that section 1094.6 was never triggered because West Bay never gave proper notice of having entered the reimbursement agreement with the developers.

At the hearing on the demurrer, West Bay argued that (1) the triggering event was the July 2001 imposition of the sewer condition to the extent the Douglases sought “to avoid having [that] condition . . . go forward” and (2) there was no final regulatory action to the extent the Douglases challenged the amount being charged to connect to the sewer.

The trial court’s written order, which was prepared by West Bay, stated:

    “*2nd Cause of Action - Regulatory Inverse Condemnation*:  This cause of action fails as it is barred by the applicable statute of limitations which is 90 days pursuant to [section] 1094.6.  [Citation.]  The limitations period runs from the imposition of the condition and not from the formalities involved in enforcing that condition.  [Citation.]  Under this rule, Plaintiffs’ petition should have been filed within 90 days of July 9, 2001 when the Conditional Use Permit was first issued.  Plaintiffs also became aware that the sewer line was under construction in June 2004, that

---

[3] All further statutory references are to the Code of Civil Procedure.

the sewer was available for connection in May 2005, and sought relief from the planning commission in 2006."

(Italics in original.)

The limitations period for an inverse-condemnation claim depends on how the claim is framed. (*Cobb v. City of Stockton* (2011) 192 Cal.App.4th 65, 70.) "[T]he five-year statute of limitations applicable to actions for adverse possession ([§ 318]) . . . applie[s] . . . 'where a public entity has physically entered and exercised dominion and control over some portion of a plaintiff's property.' " (*Ibid.*) But "the three-year statute of limitations for actions based on trespass upon or injury to real property ([§ 338, subd. (b)])" may be applicable if the claim is based on damage to the property. (*Ibid.*; but cf. *Garden Water Corp. v. Fambrough* (1966) 245 Cal.App.2d 324, 328 [determining section 338 inapplicable to inverse-condemnation claims].) And, depending on the governmental action being challenged, other and shorter limitations periods may apply to a regulatory taking—which occurs " 'where the government merely regulates the use of property' " without " 'authoriz[ing] a physical occupation of property (or actually tak[ing] title).' " (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 9-10, 22; see also *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 774-775 & fn. 11.)

"The limitations period commences when the cause of action accrues," which occurs, " '[g]enerally speaking, . . . at "the time when the cause of action is complete with all of its elements." ' " (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1317.) This rule has exceptions, however, including the discovery rule, which " 'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.' " (*Id.* at p. 1318.) " 'In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows merely that the action may be barred.' " (*Arroyo v. Plosay* (2014) 225 Cal.App.4th 279, 298.)

Initially, we agree with the Douglases that the inverse-condemnation claim against West Bay did not accrue in July 2001. West Bay argues that the Douglases' "grievance at its core is the CUP['s requirement of] connect[ion] to a sewer line" and that "[t]he

5

issue of the [r]eimbursement [a]greement is solely a collateral attack on the original CUP, since it enables satisfying the condition of the CUP by making the sewer line available." We have difficulty, however, understanding how the inverse-condemnation claim could possibly have accrued based on an action by the Town in which West Bay played no role. The fact that, but for the sewer condition, the Douglases would not have needed to connect to the sewer does not transform the imposition of that condition into the triggering event for a claim against *West Bay*, which is not alleged to have engaged in any actions affecting the property until over five years later.

Even though the trial court's reasoning in sustaining the demurrer is not entirely sound, the Douglases have failed to identify any valid theory under which the inverse-condemnation claim against West Bay is *not* time-barred. First, they do not assert when, in their view, the claim accrued. They argue that the challenged action is the entry and approval of the reimbursement agreement in August 2006, but they also emphasize that West Bay did not give proper notice of that action. Although it is true that the first amended complaint alleges there was no public notice, the complaint is silent as to when the Douglases became aware of the facts supporting the claim. As a result, the complaint offers no basis for determining that the claim accrued after August 2006. (See *E-Fab, Inc. v. Accountants, Inc. Services*, *supra*, 153 Cal.App.4th at p. 1319 [" 'plaintiff whose complaint shows on its face that . . . claim would be barred without the benefit of the discovery rule must specifically plead facts' " showing when and how claim discovered and why earlier discovery was not possible].)

Furthermore, the Douglases have failed to identify the applicable limitations period. The first amended complaint, which apparently was the first version of the complaint to include West Bay, was not filed until March 2011, over four years after the reimbursement agreement was entered and approved. The claim does not involve a physical taking, and the Douglases do not identify any statute providing for a limitations period longer than three years that might conceivably apply. At oral argument, they claimed for the first time that the limitations period was tolled while a previous action they filed in federal court was pending. They forfeited this argument by failing to raise it

6

in their briefing, however, and we decline to consider it. (*Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1027, fn. 2.)

Finally, the Douglases contend the trial court erred by not granting leave to amend only because they could have added allegations that they sought "administrative relief against . . . West Bay." But they do not suggest any way in which the complaint might be again amended to avoid a statute-of-limitations bar. As the Douglases recognize, their administrative-relief argument relates only to West Bay's position that the inverse-condemnation claim also fails for failure to exhaust administrative remedies, and such allegations would not affect the statute-of-limitations issue. Therefore, they have failed to carry their burden to show that they could amend the complaint to cure this defect. (*Davis v. Southern California Edison Co.*, *supra*, 236 Cal.App.4th at p. 635.)

> ### C. The Trial Court Properly Dismissed the Causes of Action for Declaratory and Injunctive Relief Because They Failed to State a Claim.

The Douglases also claim that the trial court erred by ruling that the causes of action for declaratory and injunctive relief were "duplicative" of the inverse-condemnation cause of action and could not be pleaded separately. We conclude that both claims were properly dismissed.

The trial court's order sustained the demurrer to the cause of action for declaratory relief on the basis it was "duplicative" of the inverse-condemnation claim, and it sustained the demurrer to the cause of action for injunctive relief on the bases that it was also duplicative of the inverse-condemnation claim and that it was "improperly asserted as a separate cause of action."

We agree with the Douglases that the declaratory-relief claim was not necessarily "duplicative" of the inverse-condemnation claim, as the former seeks a determination that the August 2006 reimbursement agreement "and related process are invalid . . . including as applied," whereas the latter seeks compensation for the reduced value of the Douglases' property. (See *Hensler v. City of Glendale*, *supra*, 8 Cal.4th at pp. 13-14 [may be appropriate to join declaratory-relief action with inverse-condemnation action].)

7

But the claim for declaratory relief nevertheless fails because it is not a proper vehicle for challenging the validity of the reimbursement agreement. The Douglases argue that declaratory relief is available under section 1060, which applies to "person[s] interested under a written instrument, excluding a will or a trust, or under a contract, or who desire[] a declaration of [their] rights or duties with respect to another, or in respect to, in over or upon property, or with respect to the location of the natural channel of a watercourse." (§ 1060.) As West Bay correctly points out, however, "[i]t is settled that an action for declaratory relief is not appropriate to review an administrative decision." (*State v. Superior Court* (1974) 12 Cal.3d 237, 249; *Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 154-155.) Although it is true that such an action may be used to seek "a declaration that a statute or regulation is facially unconstitutional," the Douglases make no such claim here, contending only that West Bay's actions were unconstitutional to the extent West Bay did not provide proper notice of the reimbursement agreement. (*Tejon Real Estate*, at pp. 154-155.) Nor do the Douglases provide any other reason that the entry and approval of the reimbursement agreement should not be considered an "administrative decision" as to which declaratory relief is clearly unavailable.

As for the injunctive-relief claim, we agree with West Bay that it cannot stand on its own. "[A] request for injunctive relief is not a cause of action" (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 984), and the Douglases do not argue otherwise. Because we affirm the dismissal of their other causes of action, they cannot seek injunctive relief against West Bay. (See *id.* at p. 985.)

### III.
#### DISPOSITION

The judgment is affirmed. West Bay is awarded its costs on appeal.

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Dondero, J.