[No. H030059. Sixth Dist. June 29, 2007.]

VALERA LYLES et al., Plaintiffs and Appellants, v.
STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Barron & Buck, Gerald V. Barron and Alexander R. Buck for Plaintiffs and Appellants.

Bruce A. Behrens, David Gossage, Lucille Y. Baca, Janet Wong, Frank Valentini and Matthew Lavrinets for Defendant and Respondent State of California.

Charles J. McKee, County Counsel, and Patrick McGreal, Deputy County Counsel, for Defendant and Respondent Monterey County.

OPINION

**PREMO, J.**—Plaintiffs Valera Lyles and William M. Lyles IV as trustee of the Valera W. Lyles Residence Trust (Trustee) sued defendants State of California (State) and County of Monterey (County) for inverse condemnation and nuisance. They sought to recover damages to residential property allegedly caused by an inadequate drainage system surrounding Highway 1 and Spindrift Road, which allowed flooding of the property during a rainstorm. The trial court granted defendants' motion for summary judgment as to inverse condemnation based on the applicable three-year statute of limitations. However, it later allowed plaintiffs leave to file an amended complaint alleging nuisance.[1] After plaintiffs filed a first amended complaint, defendants successfully demurred to the pleading based on the applicable three-year statute of limitations. On appeal from the judgment, plaintiffs contend that the discovery rule and other exceptions to the statutes of limitation delayed accrual of their causes of action. We disagree and affirm the judgment.[2]

---

[1] Strictly speaking, the trial court allowed Lyles, the only plaintiff at that point, to file an amended complaint. Lyles and Trustee then appeared as plaintiffs on the amended pleading.

[2] Plaintiffs complain in passing about procedural irregularities that arguably have merit but ultimately are of no moment. State filed the motion for summary judgment. County filed a "joinder" to that motion. Lyles objected to the "joinder" on the grounds that it was untimely (filed eight rather than 75 days before the hearing) and unauthorized (no papers accompanied the "joinder"). The trial court never ruled on the objection though its grant order treats the motion as State's motion alone. Plaintiffs' later-filed first amended complaint realleged the inverse condemnation cause of action and added the nuisance cause of action. County then demurred to both causes of action on statute-of-limitation grounds. In doing so, it asked the trial court to take judicial notice of the papers and ruling on the summary judgment motion. The sustain order refers to the nuisance cause of action only. The judgment (drafted by plaintiffs' counsel), however, references the summary judgment motion as joint and the demurrer as joint. Here, plaintiffs take the position that the summary judgment motion was joint and the trial court erred by granting County's aspect of the motion because County did

## SCOPE OF REVIEW

The parties agree that an inverse condemnation claim seeking "to recover for physical damage to private property" is subject to a three-year statute of limitations (Code Civ. Proc., § 338, subd. (j)) and a nuisance cause of action is likewise barred by a three-year statute of limitations (*id.*, subd. (b) ["trespass upon or injury to real property"]).

The parties also agree on the material facts, which are the same for each cause of action.[3] They simply disagree on the legal effect of those facts. The question before us is therefore whether the statute of limitations bars plaintiffs' causes of action. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923] [statute of limitations is normally a question of fact but may be resolved as question of law when uncontradicted facts are susceptible of only one legitimate inference].)[4]

## BACKGROUND

On February 3, 1998, a winter storm occurred in the Carmel Highlands during which water, mud, rocks, and debris flowed onto plaintiffs' property and damaged the front and back yards. Plaintiffs saw similar damage to neighboring properties. Plaintiffs' property had never before experienced flooding. During the cleanup, plaintiffs communicated with employees of State and County (as well as FEMA (the Federal Emergency Management

---

not raise the statute of limitations as an affirmative defense. Plaintiffs, however, did not raise County's failure to plead the statute of limitations in opposition to County's motion for summary judgment. They have therefore waived the point. (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590 [20 Cal.Rptr.2d 638, 853 P.2d 1093].) Even if County was not joined in the summary judgment proceeding, the first amended complaint superseded the original and County was entitled to ground a demurrer to both causes of action on the statute of limitations. (*Anmaco, Inc. v. Bohlken* (1993) 13 Cal.App.4th 891, 901 [16 Cal.Rptr.2d 675]; *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 881 [110 Cal.Rptr.2d 877].)

[3] We will not consider the declaration of Mason Case, which plaintiffs offered in opposition to the summary judgment motion, because the trial court sustained State's objection to that evidence and plaintiffs do not challenge that ruling except in conclusory fashion via footnote. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089] [on review of summary judgment, appellate court does not consider evidence to which objections have been made and sustained]; *Schaeffer Land Trust v. San Jose City Council* (1989) 215 Cal.App.3d 612, 619, fn. 2 [263 Cal.Rptr. 813] [a point that is merely suggested or interwoven rather than discussed separately under an appropriate heading is deemed to be without foundation and requires no discussion].)

[4] We are mindful that we view the material facts in the light most favorable to plaintiffs. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] [summary judgment]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317] [demurrer].)

Agency) employees and their own insurance broker) and reached a conclusion that the flooding and resulting damage were caused by "an act of God." They did nothing more to investigate the cause. In March 2003, someone told plaintiffs that one of their neighbors had sued State for the storm damage and prevailed in the Court of Appeal on facts that applied to plaintiffs' storm damage. Plaintiffs filed this action in June 2004. According to plaintiffs, a culvert under Highway 1 became clogged during the storm. This caused water to run along Highway 1, which channeled the flow onto Spindrift Road and plaintiffs' property.

## INVERSE CONDEMNATION

A cause of action for inverse condemnation alleging property damage accrues not necessarily on the date of the "taking," but, rather, "when the damage is sufficiently appreciable to a reasonable man." (*Mehl v. People ex rel. Dept. Pub. Wks.* (1975) 13 Cal.3d 710, 717 [119 Cal.Rptr. 625, 532 P.2d 489]; see also *Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, 254–256 [73 Cal.Rptr. 127] [statute runs from the time that noticeable damage occurs and reasonable notice is equated to knowledge].)

Here, the "taking" or damage occurred in February 1998 and plaintiffs knew about such at the time it happened. That plaintiffs believed that the damage resulted from natural causes does not affect these facts. Thus, plaintiffs' damage was "sufficiently appreciable to a reasonable man" in February 1998. Since plaintiffs did not file this action until June 2004, this action is barred by the statute of limitations.

Plaintiffs contend that we should apply the discovery rule in lieu of the standard articulated in *Mehl* and *Oakes*. Plaintiffs continue that, if the discovery rule is applied, the statute of limitations does not begin until the time in 2003 when they learned that State might be responsible for the storm damage. They reason that they did not know that the damage was caused by wrongdoing until that time. But a discovery rule analysis leads to the same conclusion.

Generally, a cause of action accrues for purposes of the statute of limitations, and the applicable limitations period begins to run, when the plaintiff has suffered damages from a wrongful act. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79] (*Norgart*).) However, this rule has an important exception, referred to as the discovery rule that "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Ibid.*) But the rule is not so broad as to delay accrual indefinitely until the plaintiff stumbles upon a claim. Rather, the plaintiff discovers the cause of action when he at least suspects a factual

basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him, "wrong" being used, not in any technical sense, but rather in accordance with a lay understanding. (*Id.* at pp. 397–398.) Thus, under the discovery rule, the plaintiff need not be aware of the specific facts or legal theory necessary to establish the claim. (*Ibid.*) He or she need not even know the identity of the wrongdoer. (*Id.* at p. 399.) Rather, the plaintiff need only be aware of his or her injury and have knowledge of sufficient facts to place him or her on actual or inquiry notice that the injury has a negligent cause. (*Id.* at pp. 397–398.)

The Supreme Court has recently restated the rule: "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] . . . [¶] . . . [¶] . . . In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807–808 [27 Cal.Rptr.3d 661, 110 P.3d 914].)

The discovery rule is frequently applied in medical malpractice cases. For example, in *Unjian v. Berman* (1989) 208 Cal.App.3d 881, 885 [256 Cal.Rptr. 478], a doctor injured a patient during face-lift surgery (patient looked worse after surgery). The court found a triable issue of fact as to delayed discovery after reasoning that an operation's failure to produce an expected result would not necessarily suggest to the ordinary person that the operation had been performed negligently.[5]

Property damage cases, however, are different from medical malpractice cases in the sense that, when property is damaged, there is ordinarily some wrongful cause. Thus, when one's property is damaged, one should reasonably suspect that someone has done something wrong to him and, accordingly, be charged with knowledge of the information that would have been revealed by an investigation. That particular property damage could result from natural causes does not mean that the same property damage could

---

[5] Even in the medical malpractice context, however, courts have rejected a plaintiff's attempt to invoke the discovery rule by blaming his own mistaken beliefs. (*Bristol-Myers Squibb Co. v. Superior Court* (1995) 32 Cal.App.4th 959 [38 Cal.Rptr.2d 298], overruled on other grounds by *Norgart, supra,* 21 Cal.4th 383, 410, fn. 8 [court rejected the plaintiff's argument that she thought she had no basis for suspecting that she had an action against the manufacturer of silicon breast implants because she believed that silicon was an inert substance]; *Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 780, 781 [31 Cal.Rptr.2d 162] [the plaintiff believed that her medical problems were caused by her body's rejection of breast implants and not the implants themselves—court found that a reasonable person would have been suspicious about the implants as a matter of law].)

result only from natural causes. (*Frederick v. Calbio Pharmaceuticals* (1979) 89 Cal.App.3d 49, 58–59 [152 Cal.Rptr. 292] [plaintiff's " 'blameless igno- rance' " tolls the statute of limitations where the apparent natural cause of an injury "lacks any connotation of the intervention of any immediate ·outside cause"].) For example, fire damage could result from natural causes or arson. If an injured property owner elects to believe, without investigating, that fire damage resulted from natural causes, he or she cannot expect to successfully sue an arsonist who later confesses outside the limitations period. (*Norgart, supra*, 21 Cal.4th at p. 397 [he must seek to learn the facts and cannot wait for them to find him].) Plaintiffs' flood damage is on the same footing.

We venture that the expressions of the accrual rule in *Mehl* and *Oakes* (damage sufficiently appreciable to a reasonable man) as well as cases concerning property damage outside the inverse condemnation context (see, e.g., *Siegel v. Anderson Homes, Inc.* (2004) 118 Cal.App.4th 994, 1005 [13 Cal.Rptr.3d 462] [a cause of action for damage to real property accrues when the defendant's act causes immediate and permanent injury to the property or, to put it another way, when there is actual and appreciable harm to the property]) reflect the reality that, in a patent property damage case, wrongful cause of the damage is inherently possible or suspect enough to require a reasonable, prompt investigation.

It is true that the discovery rule has been applied in property damage cases involving latent defects. (See *Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 406–407 [163 Cal.Rptr. 711] (*Leaf*); see, e.g., *Siegel v. Anderson Homes, Inc., supra*, 118 Cal.App.4th 994.) But this case involves a one-time known damage event, the equivalent of a patent defect. Even so, the discovery rule as expressed in the latent-defect cases is consistent with *Mehl* and *Oakes*: "In the case of such latent defects the statute of limitations begins to run only when 'noticeable damage occurs.' " (*Leaf, supra*, 104 Cal.App.3d· at p. 407, citing *Mehl v. People ex rel. Dept. Pub. Wks., supra*, 13 Cal.3d 710, and quoting *Oakes v. McCarthy, supra*, 267 Cal.App.2d at p. 254.)

Plaintiffs nevertheless rely on *Leaf.* But this reliance is erroneous.

In *Leaf*, the plaintiffs discovered uneven floors and exterior cracks in a building they had recently purchased. Engineers concluded that differential settlement and soils subsidence had damaged the building. The plaintiffs sued several parties involved in the original construction and settled that action. During repairs, a cave-in revealed that the actual cause of the problem was an uncompacted sewer trench left by the City of San Mateo. When the plaintiffs sued the city, the trial court granted summary judgment on the ground that the statute of limitations had run. On appeal, the court applied the discovery rule and reversed. It held that the plaintiffs' cause of action accrued either when

they became aware that the city's negligence caused the damage, or when they could have become aware of that fact through the exercise of reasonable diligence: "The ultimate question therefore is whether plaintiffs exercised reasonable diligence in discovering the negligent cause of their injuries. [Citation.] We see no reason to commence the running of the statute of limitations when plaintiffs, at the outset, made reasonable, but unsuccessful, efforts to identify the negligent cause of damage. Where, as in this case, plaintiffs consulted with professional engineers as to the source of their injury, they were entitled to rely upon that advice. [Citation.] It would be contrary to public policy to require that plaintiffs file a lawsuit against City of San Mateo at a time when the evidence available to them failed to indicate a cause of action against this defendant." (*Leaf, supra,* 104 Cal.App.3d at pp. 408–409.)

This case stands in sharp contrast. Where the *Leaf* plaintiffs were diligent in their attempts to ascertain the cause of their subsidence, including hiring experts and promptly pursuing claims against the only identified wrongdoers, plaintiffs in this case were not. They did nothing to ascertain the cause of their storm damage. To the extent that plaintiffs did anything, what plaintiffs did, in the face of direct and observable injury, was essentially accept opinions denying responsibility from employees of the now-accused parties and other nonexperts and conclude that there was a natural cause of the damage. In short, plaintiffs ignored the direct visual evidence on which their claim now rests. Such an argument cannot stand, either as a matter of law or logic.

Plaintiffs urge that the statute of limitations did not begin because their property suffers continuous and repeated damage that has not stabilized. (*Lee v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 848, 857–858 [132 Cal.Rptr.2d 444] (*Lee*).) According to plaintiffs, State has never modified the essential condition of the culvert and, thus, the condition continues to threaten their property. There is no merit to this point.

In *Lee*, the county transportation authority began constructing the Metro Rail Red Line underneath Hollywood Boulevard in 1992. The plaintiff observed that water had accumulated on or around her Hollywood Boulevard property in 1995. She suspected that plumbing in her building was the source of the problem and informed her insurance carrier. An inspection determined that the city's water pipes were undermining the sidewalk and Hollywood Boulevard. At that point, there had been no apparent damage to the plaintiff's building. In 1996, the sidewalks and roadbed directly in front of the plaintiff's property buckled. The plaintiff notified a city inspector about her observations and requested the city to address the pipe problem because it

was affecting her business. FEMA told her that an earthquake was not the cause of the pipe problem. In 1997, a city building inspector told the plaintiff that the problem was not on her property but that the damage could be related to activities of the transportation authority. The plaintiff then received geological and engineering reports from experts she had hired. The reports concluded that the damage to her building was caused by subway construction activities and recommended that mitigation measures include a new foundation. Throughout the fall of 1997, the plaintiff had contact with the transportation authority's insurance adjustors. She filed her inverse condemnation and related tort action against the transportation authority in May 2000 alleging that her property had been damaged by ongoing construction of the subway. The transportation authority demurred on statute-of-limitation grounds. The parties accepted that the inverse condemnation action accrued when the plaintiff either knew or reasonably should have known of the damage to her property. The trial court sustained the demurrer. But the court reversed after relying on *Pierpont Inn, Inc. v. State of California* (1969) 70 Cal.2d 282 [74 Cal.Rptr. 521, 449 P.2d 737], disapproved on another ground in *Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694 [66 Cal.Rptr.2d 630, 941 P.2d 809], and *Stonewall Ins. Co. v. City of Palos Verdes Estates* (1996) 46 Cal.App.4th 1810 [54 Cal.Rptr.2d 176]. It held that, where property damage incident to a work of public improvement is continuous and repeated, the limitations period does not begin to run until the damage has "stabilized." (*Lee, supra,* 107 Cal.App.4th at pp. 856–857.) The court based its holding on the plaintiff's allegation that the "construction of the subway rail system 'is and/or will be continuing in the future . . .' [and that] . . . '[t]he ongoing construction has damaged and Plaintiffs are informed and believed will continue to damage Plaintiff's businesses and properties' " by activities that did cause and " 'will continue to cause ongoing interference' " with the plaintiff's use of the property. (*Id.* at p. 858.) The court concluded that the "plaintiff ha[d] adequately alleged a continuous and repeated course of conduct causing damages to her property, which had not stabilized at the time" the action was filed. (*Ibid.*)

The key distinction between this case and *Lee* is that *Lee* involved alleged damage caused by the ongoing activities of the public entity related to construction of a public work of improvement. In other words, it was the deliberate and ongoing conduct of the entity in the course of construction that had caused, and would continue to cause, damage to the property. Here, in contrast, defendants are not performing ongoing activities that will, of necessity, stabilize when the activities cease. In this case, there was a single "activity" that occurred once in 1998. Defendants' failure to modify the culvert does not affect this point. As unmodified, the culvert is conceptually part of the original condition of the original construction activity rather than

part of ongoing construction activities. These circumstances do not justify application of the "stabilization" approach to accrual of an inverse condemnation cause of action.

## NUISANCE

Since we have concluded that plaintiffs were put on inquiry notice of their inverse condemnation claim in 1998, the same holds true with respect to the nuisance claim.

Plaintiffs, however, contend that their nuisance claim is of the continuing variety. They assert that they are not time-barred from recovery to the extent that the faulty drainage system threatens to flood their property. Plaintiffs are incorrect.

Whether a nuisance is continuing or permanent depends "on the type of harm suffered." (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 868 [218 Cal.Rptr. 293, 705 P.2d 866] (*Baker*).) "[P]ermanent nuisances are of a type where ' "by one act a permanent injury is done, [and] damages are assessed once for all." ' " (*Ibid.*) Nuisances found to be permanent in nature include "solid structures, such as a building encroaching upon the plaintiff's land [citation], a steam railroad operating over plaintiff's land [citation], or regrade of a street for a rail system [citation]." (*Id.* at p. 869, fns. omitted.) For a permanent nuisance, damages are "complete when the nuisance comes into existence," and an action must generally be brought "within three years after the permanent nuisance is erected." (*Ibid.*; but see Gov. Code, § 911.2 [government claim filing period one year].) A nuisance is not permanent, but continuing, if the nuisance "may be discontinued at any time." (*Baker, supra,* 39 Cal.3d at p. 869.) "The classic example of a continuing nuisance is an ongoing or repeated disturbance, such as . . . one . . . caused by noise, vibration or foul odor." (*Ibid.*) A person harmed by a continuing nuisance "may bring successive actions for damages until the nuisance is abated." (*Ibid.*)

In any event, the "continuing" nature of a nuisance "refers to the continuing damage caused by the offensive condition, not to the acts causing the offensive condition to occur." (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1147 [281 Cal.Rptr. 827].)

Here, it is undisputed that plaintiffs suffered one-time damage in 1998 and no damage since 1998. Thus, assuming that defendants' faulty drainage system constitutes a nuisance, it is of the permanent variety that requires plaintiffs to sue within three years of being damaged. This action is therefore untimely. We recognize that plaintiffs disagree with *Mangini* and assert that

the word "continuing" in "continuing nuisance" refers to the continuing existence of the offensive condition rather than continuing damage from the offensive condition. But they cite no authority for the proposition. Plaintiffs' fear of future harm does not transform a permanent nuisance into a continuing nuisance. "[A] private nuisance action cannot be maintained for an interference in the use and enjoyment of land caused solely by the fear of a future injury." (*Koll-Irvine Center Property Owners Assn. v. County of Orange* (1994) 24 Cal.App.4th 1036, 1041–1042 [29 Cal.Rptr.2d 664]; cf. *Helix Land Co. v. City of San Diego* (1978) 82 Cal.App.3d 932, 950 [147 Cal.Rptr. 683] [future flooding threat]; see *Baker, supra*, 39 Cal.3d at p. 869 ["[p]rospective damages are unavailable"].)

## DISPOSITION

The judgment is affirmed.

Rushing, P. J., and Elia, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 10, 2007, S155414.