Filed 5/31/24  Stack v. Southern Cal. Edison Co. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BRIAN STACK et al., | B328041 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCV15763) |
| v. | |
| SOUTHERN CALIFORNIA EDISON COMPANY et al., | |
| Defendants and Respondents. | |

APPEALS from judgments of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Strange, Brian R. Strange, John T. Ceglia, Brianna J. Strange and R. Martin Weber, Jr. for Plaintiffs and Appellants.

Hueston Hennigan, John C. Hueston, Douglas J. Dixon, Andrew K. Walsh and Craig A. Fligor for Defendant and Respondent Southern California Edison Company.

Horvitz & Levy, Mitchell C. Tilner, Stephen E. Norris, Rebecca G. Powell; Wilson, Elser, Moskowitz, Edelman & Dicker and Daniel S. Hurwitz for Defendant and Respondent Universal Protection Service, L.P.

Gibson, Dunn & Crutcher, Thomas A. Manakides, Abbey Hudson, Joseph D. Edmonds and Peter Modlin for Defendant and Respondent The Boeing Company.

_____

Plaintiffs Brian and Roohi Stack (the Stacks) appeal from judgments of dismissal in favor of Southern California Edison Company, Universal Protection Service, LP, and The Boeing Company (collectively, defendants).[1] The trial court found as time-barred the Stacks' causes of action based on a wildfire allegedly caused by defendants destroying the Stacks' home. On this basis, the trial court sustained defendants' demurrers and granted their motions to strike.

On appeal, the Stacks assert two independent arguments as to why their complaint was timely. First, they contend under the discovery rule, their causes of action could not have accrued until November 14, 2018, the first day authorities lifted the mandatory evacuation order and the Stacks were able to return to their property to learn their house had burned down. Second, they contend the applicable limitations period was tolled during the pendency of a class action concerning the wildfire.

---

[1] The trial court also entered judgment in favor of Edison International, Southern California Edison's parent company. The Stacks did not file a notice of appeal from that judgment. Edison International therefore is not party to this appeal.

2

All but one of the Stacks' causes of action are subject to a three-year statute of limitations. As to those causes of action, and as set forth in our Discussion, *post*, the parties have different interpretations of Supreme Court precedent regarding when a limitations statute starts to run. Defendants contend the suspicion of harm starts the limitations period running. The Stacks interpret the same precedent to argue reasonable suspicion is not enough for their causes of action to accrue if they could not have determined their property was harmed at all before the evacuation order was lifted. Even assuming defendants' interpretation of Supreme Court precedent, we conclude the complaint does not reveal as a matter of law that the Stacks had a reason to suspect their property was harmed *before* the evacuation order was partially lifted.

As described in the complaint, the evacuation orders covered a broad geographical area stretching from Ventura County into Los Angeles County, and the fact the Stacks' home was within that broad area does not support as a matter of law that when the Stacks were evacuated, they had reason to suspect damage to their home just because their property was within that geographic area. Thus, the complaint does not reveal that the Stacks' claims subject to the three-year limitations statute are time-barred as a matter of law even accepting defendants' interpretation of our high court's precedent on the discovery rule. Given this conclusion, we do not address the Stacks' argument that the pendency of the class action tolled running of the limitations period on the causes of action subject to a three-year statute of limitations.

We further conclude the cause of action under Public Utilities Code section 2106 is subject to a two-year statute of

3

limitations and is untimely regardless of the discovery rule or class action tolling.

Accordingly, we affirm in part and reverse in part.

## BACKGROUND

### 1.  *Complaint*

On May 11, 2022, the Stacks filed a complaint against defendants and Edison International.[2]  In the first amended complaint, the operative complaint for purposes of this appeal, the Stacks alleged the following, which we accept as true for purposes of reviewing the ruling on defendants' demurrer.  (See *Los Angeles Waterkeeper v. State Water Resources Control Bd.* (2023) 92 Cal.App.5th 230, 264 (*Los Angeles Waterkeeper*).)

The Stacks' home was destroyed by the 2018 Woolsey wildfire.  The fire began on November 8, 2018 on a property owned by Boeing in Ventura County near Simi Hills, and spread towards Point Dume in Malibu, where the Stacks lived.[3]  On November 9, authorities issued a mandatory evacuation order, which the Stacks obeyed.  In all, authorities ordered 75,000 homes and 295,000 people to evacuate.

As stated in the first amended complaint, the fire "burned onto Point Dume . . . on November 9, 2018 and it continued to destroy homes in the area through the weekend.  On

---

[2]  Paul Woodman was the Stacks' coplaintiff.  His claims are not at issue in this appeal, nor are the trial court's rulings as to those claims.

[3]  We take sua sponte judicial notice that Point Dume is in Los Angeles County.  (Evid. Code, §§ 452, subds. (g), (h), 459, subd. (a).)

4

November 11, 2018, houses were still burning down despite the heroic efforts of a group of residents who bucked the evacuation orders to try and save homes."

On November 14, 2018, officials allowed Point Dume residents to return to the area on a limited basis. Residents had to enter on foot through a manned checkpoint 14 miles from Point Dume. Brian Stack and his son passed through the checkpoint on November 14 and, after obtaining a ride from a law enforcement officer, arrived at their property that afternoon. They saw their "house was a total loss."

Officials did not lift the mandatory evacuation orders completely "until at least November 17, 2018" because, inter alia, "spot fires were still burning in Malibu" and "houses were still on fire." Approximately 1,600 structures were lost in the fire.

The Stacks alleged Southern California Edison and Edison International were responsible for the Woolsey wildfire because they failed to maintain their electrical facilities in a safe manner, failed to perform vegetation management in accordance with the applicable regulations, and failed timely to shut down the circuit that caused the fire. The Stacks alleged Boeing and its fire prevention and firefighting contractor, Universal Protection Service, also were responsible because they failed to provide adequate fire protection and firefighting resources.

The first amended complaint asserted causes of action for negligence, negligence per se, inverse condemnation, trespass, nuisance, and liability under Public Utilities Code section 2106 and Health and Safety Code sections 13007 and 13008.[4]

---

[4] Public Utilities Code section 2106 imposes liability on a public utility for losses, damages, or injury caused by the utility's

5

## 2. *Demurrers and motions to strike*

Defendants and Edison International filed demurrers and motions to strike arguing the Stacks' causes of action and damages allegations were untimely under the applicable statutes of limitations.[5] Defendants contended the causes of action were subject to either a two- or three-year limitations period. Defendants read the complaint to allege the Stacks suffered fire damage on November 9, 2018, and argued the limitations period started on that date. The limitations period was extended by 178 days under California Rules of Court Emergency rule 9(a), which tolled most statutes of limitations due to the COVID-19 pandemic. The defendants thus argued the last applicable limitations period expired on May 6, 2022, three years and 178 days after November 9, 2018. This was five days before the Stacks filed their complaint.

In opposition, the Stacks cited the discovery rule, arguing the statute of limitations did not begin to run until November 14, 2018, the day the Stacks returned to their property and learned their house had burned down. The Stacks further argued that, under *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 (*Jolly*), the

---

unlawful acts or omissions. Health and Safety Code sections 13007 and 13008 impose liability for setting fire to another's property or allowing a fire on one's property to escape to another's property.

[5] Southern California Edison and Edison International filed a joint demurrer and motion to strike. Boeing joined in the arguments raised in that demurrer and motion to strike in addition to raising its own arguments. Universal Protection Service joined in the demurrers and motions filed by the other defendants.

limitations period was tolled for an additional 267 days during the pendency of a class action concerning the Woolsey fire, *Perkins, et al. v. S. Cal. Edison Co., et al.* (Super. Ct. Los Angeles County, No. 18STCV05313).[6]

On February 14, 2023, the trial court sustained the demurrers and granted the motions to strike. The court's written ruling does not include the court's reasoning, but instead incorporates by reference its analysis in a January 6, 2023 order in another Woolsey wildfire case, *Dayani v. Southern California Edison Co.* (Super. Ct. Los Angeles County, No. 22STCV19265).[7]

In *Dayani*, the trial court granted Southern California Edison's motion to strike the plaintiff's fire-related claims, filed on June 13, 2022, as untimely, and rejected the plaintiff's invocation of the discovery rule and tolling due to the pendency of the *Perkins* class action. As to the discovery rule, the trial court observed that the plaintiff in *Dayani* had "pled that she was unable to 'adequately survey [her] property to ascertain the damages' until May 2019 because the fire and subsequent debris flows impeded access to her land." The court added, " '[W]hen one's property is damaged, one should reasonably suspect that someone has done something wrong to him and, accordingly, be charged with knowledge of the information that would have been revealed by an investigation.' [Citation.] Plaintiff's inability to access her property due to damage to the land, property, and

---

[6] The Stacks also argued their claims alleged a continuing nuisance that delayed accrual of the limitations period. They do not reassert this argument on appeal, and we express no opinion on it.

[7] As of the filing date of this opinion, the *Dayani* parties have not yet sought review of the decision by writ or appeal.

7

nearby roadways and driveways would provide her with sufficient knowledge to reasonably suspect someone had done something wrong to her. [Citations.] She cannot claim the benefit of the delayed discovery rule by arguing that damage to her property prevented her from learning about damage to her property."

The trial court in *Dayani* also rejected the plaintiff's argument that the *Perkins* class action tolled the statute of limitations. The court cited case law for the proposition that tolling due to a pending class action is appropriate only if "the tolled suit raises claims concerning the same evidence, memories, and witnesses as the subject matter of the original class suit." The court found, "Certification of the class claims asserted in *Perkins* would be impossible due to gross lack of commonality. Because the *Perkins* class action would never have been amenable to proof through common evidence, it necessarily involves different evidence, memories, and witnesses than those at the heart of Plaintiff's individual claims in this case." The *Perkins* class action was "a mass tort action where ascertainment of the number and generic identities of potential individual plaintiffs from the *Perkins* class definition is unfeasible." The court also found the plaintiff, having waited almost three years after *Perkins* was voluntarily dismissed to file her complaint, "cannot claim to have reasonably relied on the *Perkins* action in delaying bringing her own individual claims . . . . Instead, she is treating the *Perkins* class claims as a coupon to extend her filing deadline by nine months. This is not reasonable reliance and not reasonable delay."

In the instant case, the trial court wrote, "Analytically, [Southern California Edison's] demurrer and [motion to strike]

8

present the exact same legal issues as the motion to strike in [*Dayani*].  For this reason, the demurrer will be sustained and the motion granted, both without leave to amend."  In granting Boeing's demurrer and motion to strike, the court similarly wrote, "[T]he analysis is simple and the same as the *Dayani* ruling cited above."

The trial court entered judgments of dismissal in favor of defendants and Edison International.  The Stacks timely appealed from all judgments except the judgment in favor of Edison International.

## STANDARD OF REVIEW

" 'We independently review [a] ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action.' [Citation.]" (*Los Angeles Waterkeeper*, *supra*, 92 Cal.App.5th at p. 264.)  "We 'adopt[ ] a liberal construction of the pleading and draw[ ] all reasonable inferences in favor of the asserted claims.' [Citation.]" (*Robertson v. Saadat* (2020) 48 Cal.App.5th 630, 639.)  " '[W]e accept as true the well-pleaded allegations in [the] . . . complaint. . . .' [Citation.]" (*Los Angeles Waterkeeper*, at p. 264.)  " '[W]e treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. . . .' [Citations.]" (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1041.)  "We are not bound by the trial court's reasoning and may affirm the judgment if correct on any theory." (*Robertson*, at p. 639.)

Motions to strike challenging the legal sufficiency of allegations in a complaint are akin to demurrers, and the grant of such a motion to strike is thus also reviewed de novo.  (See *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 529.)  As

with demurrers, " '[i]n passing on the correctness of a ruling on a motion to strike, judges read allegations of a pleading subject to a motion to strike as a whole, all parts in their context, and assume their truth.' [Citation.]" (*Today's IV v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1192–1193.)

We also observe, " 'It is difficult for demurrers based on the statute of limitations to succeed because (1) trial and appellate courts treat the demurrer as admitting all material facts properly pleaded and (2) resolution of the statute of limitations issue can involve questions of fact. . . .' [Citation.]" (*Schmier v. City of Berkeley* (2022) 76 Cal.App.5th 549, 554.) " '[F]or a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed.' [Citation]." (*Ibid.*)

## DISCUSSION

### A.   Statutes of Limitations Applicable to the Stacks' Causes of Action

"Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 389.) "[T]he fundamental purpose of the statute is to give defendants reasonable repose, that is, to protect parties from defending stale claims. A second policy underlying the statute is to require plaintiffs to diligently pursue their claims." (*Jolly*, *supra*, 44 Cal.3d at p. 1112.)

### 1. Causes of action subject to three-year statute of limitations

All of the Stacks' causes of action except the Public Utilities Code claim are subject to a three-year statute of limitations. The negligence, nuisance, and trespass claims are subject to the three-year statute of limitations under Code of Civil Procedure section 338, subdivision (b), for "[a]n action for trespass upon or injury to real property." That same subdivision governs the causes of action under Health and Safety Code sections 13007 and 13008 alleging defendants allowed the fire to escape onto the Stacks' property. (See *Scholes v. Lambirth Trucking Co.* (2020) 8 Cal.5th 1094, 1100–1101.) Inverse condemnation is subject to a three-year statute of limitations under Code of Civil Procedure section 338, subdivision (j), which covers actions "to recover for physical damage to private property under Section 19 of Article I of the California Constitution." (See *Lyles v. State of California* (2007) 153 Cal.App.4th 281, 285 (*Lyles*).)

### 2. The Public Utilities Code claim is subject to a two-year statute of limitations

Public Utilities Code section 2106, a section of the Public Utilities Act (Pub. Util. Code, § 201 et seq.)[8] provides, in relevant part, "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the [Public Utilities Commission], shall be liable to the

---

[8] Further unspecified statutory citations are to the Public Utilities Code.

11

persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom."

Section 735, also within the Public Utilities Act, provides, in relevant part, "All complaints for damages resulting from a violation of any of the provisions of this part [i.e., the Public Utilities Act] . . . shall either be filed with the [Public Utilities Commission], or where concurrent jurisdiction of the cause of action is vested by the Constitution and laws of this State in the courts, in any court of competent jurisdiction, within two years from the time the cause of action accrues, and not after."

Below and in their appellate briefing, defendants asserted the Stacks' causes of action "ha[ve] a two- or three-year limitations period," and identified section 735 as providing the statute of limitations for the Stacks' cause of action under section 2106. The parties and trial court have not addressed section 735 further, either below or in their appellate briefing. We therefore requested and received supplemental briefing from the parties to the section 2106 cause of action on the applicability of section 735.

In their supplemental brief, the Stacks argue section 735, by its terms, applies only to "complaints for damages resulting from a violation of any of the provisions of" the Public Utilities Act (§ 735), whereas section 2106 is broader, allowing suits against public utilities not only for violations of the Public Utilities Act, but also violations of "the Constitution, any law of this State, or any order or decision of the [Public Utilities Commission]" (§ 2106). Based on this language, the Stacks contend the two-year limitations period under section 735 applies to section 2106 claims only to the extent those claims are premised on violations of the Public Utilities Act, as opposed to

12

other laws.  The Stacks further assert their section 2106 claim is premised in part on violations of laws or regulations outside of the Public Utilities Act, and therefore section 735 does not apply.

The Stacks cite no authority in support of their argument, apart from the language of sections 735 and 2106 themselves. We need not decide the scope of section 735, however, because assuming arguendo it applies only to section 2106 claims premised on violations of the Public Utilities Act as opposed to other laws, the Stacks' section 2106 claim is premised entirely on violations of the Public Utilities Act.

Under their section 2106 cause of action, the Stacks alleged Southern California Edison "violated Public Utilities Code sections 702 and 451, and/or Public Utilities Commission General Order 95."  The Stacks also referenced Public Utilities Commission Rule 33.1 and General Order 165, although they did not expressly allege violations of these provisions.

Sections 451 and 702 are within the Public Utilities Act. Although the Stacks appear to imply that violations of the Public Utilities Commission's rules and orders do not constitute violations of the Public Utilities Act, section 702 provides, in relevant part, "Every public utility shall obey and comply with every order, decision, direction, or rule made or prescribed by the [Public Utilities Commission] in the matters specified in [the Public Utilities Act], or any other matter in any way relating to or affecting its business as a public utility . . . ."  Thus, violations of Public Utilities Commission orders and rules also are violations of section 702.  The Stacks' Public Utilities Code claim alleges only violations of the Act itself.

The Stacks alternatively contend Southern California Edison forfeited its argument based on section 735 because that

argument "was not advanced, much less developed . . . in the trial court." We disagree. As noted, defendants identified section 735 as the applicable statute of limitations for the section 2106 claim in their briefing below and on appeal. The Stacks did not contest this or even address section 735 in their opposition below or in their appellate briefing. Southern California Edison had no obligation to "develop" the uncontested assertion that section 735 applies.

### 3. Calculation of the relevant limitations periods

In response to the COVID-19 pandemic, California Rules of Court Emergency rule 9(a) tolled "the statutes of limitations and repose for civil causes of action that exceed 180 days . . . from April 6, 2020, until October 1, 2020." The parties disagree whether October 1, 2020 is counted as part of the tolling period— the Stacks contend it is, and therefore the tolling period is 179 days, whereas defendants assert the tolling period is 178 days. Because the one-day difference is immaterial to our analysis, we leave this debate for another day and accept arguendo defendants' position that the period is 178 days.

Thus, for all but the Public Utilities Code cause of action, the Stacks had three years and 178 days to file their complaint once their causes of action accrued. They filed their complaint on May 11, 2022. For the complaint to be timely, their causes of action would have had to accrue no earlier than November 14, 2018, absent additional bases for tolling. The Public Utilities Code violation would have had to accrue no earlier than November 14, 2019, absent additional bases for tolling.

14

**B.    The Complaint Does Not Reveal as a Matter of Law that the Limitations Period Started To Run Before the Evacuation Order was Lifted and the Trial Court Thus Erred In Sustaining the Demurrers as Untimely**

Whether the trial court erred in sustaining the demurrers turns on whether the complaint reveals as a matter of law that the Stacks' claims accrued before November 14, 2018.  Because we conclude the complaint is susceptible to a reasonable inference that the Stacks did not have a reasonable suspicion that their property was harmed before being able to access the property, the trial court erred in sustaining the demurrers.

**1.    The discovery rule**

In *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 (*Fox*), our high court described when a limitations period accrues.  "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.]"  (*Id.* at p. 806.)  It also described an "important exception"—the discovery rule—"which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  (*Id.* at p. 807.)  The court articulated the rule in the following manner:  "[A] cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.  In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis."  (*Id.* at p. 803.)

15

A plaintiff seeking to invoke the discovery rule " 'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.]" (*Fox, supra*, 35 Cal.4th at p. 808.) " 'When a plaintiff reasonably should have discovered facts for purposes of the accrual of a ca[u]se of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence (or, in this case, the allegations in the complaint and facts properly subject to judicial notice)[9] can support only one reasonable conclusion.' [Citations.]" (*Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1252.)

2. **Analysis**

a. ***The trial court erred in finding its reasoning in* Dayani *disposes of the claims herein***

Before we turn to the parties' contentions, we first conclude that the trial court's stated reasoning does not support its sustaining of the demurrers. As summarized *ante*, the trial court relied on its ruling in the *Dayani* case, without further elaboration. The allegations in the *Dayani* complaint, however, are markedly different from those in the Stacks' complaint.

---

**9** Defendants have not requested we take judicial notice of any facts on appeal. Below, Boeing requested the trial court take judicial notice of the mandatory evacuation order and seven news articles about the fire. The trial court took judicial notice of the evacuation order, although noting the order was not relevant to its ruling, and otherwise denied the request.

16

In *Dayani*, the trial court interpreted that complaint as alleging that damage to the plaintiff's property prevented her from accessing the property to assess the extent of the damage. The court found the plaintiff's knowledge of damage barring entry onto the property "would provide her with sufficient knowledge to reasonably suspect someone had done something wrong to her." The court wrote, "[The plaintiff] cannot claim the benefit of the delayed discovery rule by arguing that damage to her property prevented her from learning about damage to her property."

The Stacks, in contrast, did not allege the damage to the property prevented them from determining the extent of that damage. Rather, they allege the mandatory evacuation order prevented them from entering their property at all. They do not allege that they were aware their property had been damaged before November 14. Even assuming arguendo the trial court correctly decided *Dayani*, that ruling does not compel the same outcome here.

>    **b.** ***Assuming suspicion of injury alone is sufficient to trigger the statute of limitations, the complaint does not reveal as a matter of law that the Stacks had reason to suspect prior to November 14 that their property was harmed***

The parties disagree as to how the discovery rule applies in this case. The Stacks argue because they have alleged the mandatory evacuation order prevented them from returning to their property until November 14, 2018, they did not discover, and could not have discovered, harm to their property until that date, harm being an essential element of their potential causes of

17

action.  Accordingly, they contend the discovery rule delayed accrual of their causes of action until November 14.

Defendants assert the complaint reveals as a matter of law that the Stacks had reason to suspect damage to their property prior to November 14, and this suspicion was enough to start the limitations period running.  Defendants quote the following language from Fox:  "[P]laintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] on inquiry' " ' or if they have ' " 'the opportunity to obtain knowledge from sources open to [their] investigation.' " ' [Citation.]" (*Fox*, *supra*, 35 Cal.4th at pp. 807–808, fn. & italics omitted.)  Defendants emphasize the "or" in that statement, implying it is enough to trigger the statute of limitations if a plaintiff suspects an injury, i.e., has " ' " 'information of circumstances to put [them] on inquiry' " ' " as to whether the plaintiff has suffered an injury, regardless of whether the plaintiff has had a reasonable opportunity to investigate.

In light of this language, defendants contend *Fox* supports their argument that (1) because the Starks "were evacuated from their property due to the fire," they should have suspected before November 14 that their property was wrongfully harmed; (2) this suspicion was enough to commence accrual of the limitations period; and (3) the Starks had three years plus the COVID-related extra 178 days to investigate potential causes of action but nevertheless failed to bring timely claims.

It is unnecessary to resolve the parties' disagreement as to the law defining accrual of a cause of action.  Even assuming arguendo suspicion of injury by itself is sufficient to trigger the statute of limitations, as defendants contend, the allegations of

18

the complaint do not establish as a matter of law that prior to November 14, the Stacks had reason to suspect damage to their property.

Although the complaint describes in detail the path of the fire from Ventura County onto Point Dume in Los Angeles County and the destruction the fire caused, it says virtually nothing about the Stacks themselves except that they lived on Point Dume, were subject to a mandatory evacuation order on November 9, 2018, and returned to their property on November 14.  There are no allegations regarding what the Stacks knew about the fire, including where it was, the path it was taking, and whether their particular property was in danger at the time the events were unfolding.

To the extent defendants suggest the mere fact the Stacks allege they were evacuated due to fire should have put them on notice of possible damage to their property as a matter of law, we disagree.  The Stacks allege the evacuation orders issued during the fire were broad, extending across two counties and affecting 75,000 homes and 295,000 people, but only 1,600 structures were destroyed.  The mere fact the Stacks' home was within the geographically large fire evacuation zone, therefore, does not suggest they had reason to suspect at the time they were evacuated that their particular home or even homes in their neighborhood were harmed.

We therefore conclude that the Stacks have sufficiently pleaded that their causes of action did not accrue until November 14, 2018, the first day they "discover[ed], or ha[d] reason to discover" the damage to their property.  (*Fox*, *supra*, 35 Cal.4th at p. 807.)

19

We emphasize that our holding is compelled by the standard of review applicable to demurrers, under which we assume the truth of the allegations and draw every fair inference in favor of the Stacks. We express no opinion on how we would resolve this matter on a more developed evidentiary record.

### c.    *Defendants' cited cases involve plaintiffs with actual knowledge of the harm to their property, and therefore are inapposite*

Defendants cite *Lyles*, *supra*, 153 Cal.App.4th 281, for the proposition that "the discovery rule typically does not apply in property-damage cases." *Lyles* is factually distinguishable and not instructive on the issues before us.

In *Lyles*, the plaintiffs sued the state for inverse condemnation and nuisance when their property was flooded in 1998 following a storm, allegedly because of an inadequate drainage system. (*Supra*, 153 Cal.App.4th at pp. 284–285.) The plaintiffs filed suit in 2004, more than three years after the flooding occurred, but argued their cause of action did not accrue until 2003, when they allegedly learned the drainage system caused the flood. (*Id.* at p. 286.)

The Court of Appeal held the discovery rule did not apply. The court wrote, "[W]hen one's property is damaged, one should reasonably suspect that someone has done something wrong to him and, accordingly, be charged with knowledge of the information that would have been revealed by an investigation. That particular property damage could result from natural causes does not mean that the same property damage could result only from natural causes." (*Lyles*, *supra*, 153 Cal.App.4th at pp. 287–288.) As an example, the court noted "fire damage could result from natural causes or arson. If an injured property

20

owner elects to believe, without investigating, that fire damage resulted from natural causes, he or she cannot expect to successfully sue an arsonist who later confesses outside the limitations period." (*Id.* at p. 288.)

*Lyles* illustrates the general principle that when a property owner knows of damage to his property, the property owner ordinarily has reason to suspect a wrongful cause of that damage, and thus, may be charged with knowing whatever would have been revealed by a reasonable investigation. This principle, as stated in *Lyles*, assumes the property owner *already knows* of his injury. (See *Lyles, supra,* 153 Cal.App.4th at p. 287 ["the plaintiff need only *be aware of his or her injury* and have knowledge of sufficient facts to place him or her on actual or inquiry notice that the injury has a negligent cause," italics added].) *Lyles* does not speak to the issue presented here, namely under what conditions a plaintiff who lacks actual knowledge of damage to his or her property nonetheless should *suspect* damage. The *Lyles* plaintiffs, unlike the Stacks, were present on their property when the damage occurred. (See *Lyles, supra,* 153 Cal.App.4th at p. 286 [plaintiffs knew of the damage to their property "at the time it happened"].)

Defendants also argue case law establishes that "a property owner's absence from the property does not delay accrual." The cases they cite for this broad principle do not support it.

Defendants' cited cases involve property owners who, like the *Lyles* plaintiffs, had immediate notice of damage to their property, yet were not diligent in investigating the cause or extent of the damage, and subsequently made insurance claims outside the limitations period in their policies. In those circumstances, courts have held the property owners could not

21

invoke the discovery rule. (See *Abari v. State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530, 535 [discovery rule did not apply when property owner knew of cracks in home, but due to "being an absentee landlord," did not learn until years later that the cracks were caused by subsidence and therefore covered by his insurance policy]; *Hill v. Allstate Ins. Co.* (C.D.Cal. 1997) 962 F.Supp. 1244, 1245, 1248 [discovery rule did not apply when tenants immediately notified out-of-state landlord the property had been impacted by the 1994 Northridge earthquake, but landlord was not diligent thereafter in inspecting the home and making an insurance claim].) These cases thus do not provide guidance as to application of the discovery rule to the allegations before us: landowners who did not actually know their property was harmed and could not be charged with reasonably suspecting such damage merely because their property was located in a vast geographic area subject to a fire evacuation order.

## C. The Stacks' Cause of Action Under Public Utilities Code Section 2106 Is Untimely

The Stacks offer no theory supporting the timeliness of their cause of action under Public Utilities Code 2106. As alleged, that cause of action, like all the Stacks' causes of action, accrued on November 14, 2018. Adding 178 days for pandemic tolling to the two-year limitations period under Public Utilities Code section 735, the Stacks would have had to bring that cause of action no later than May 11, 2021. Assuming arguendo the pendency of the *Perkins* class action further tolled the limitations period 267 days, as the Stacks contend, the deadline would be extended to February 2, 2022. The Stacks did not file their complaint until May 11, 2022. The trial court did not err in

sustaining the demurrer to the cause of action under Public Utilities Code section 2106.

## D.     The Trial Court Erred In Granting the Motions To Strike

As noted in our Background, *ante*, in addition to demurrers, defendants filed motions to strike the Stacks' allegations, also based on the statute of limitations and seeking materially the same relief as the demurrers.  The trial court granted the motions to strike along with the demurrers and cited the same reasoning for both.

In their appellate briefing, the parties raise no arguments applicable just to the motions to strike.[10]  The Stacks state their arguments on appeal "apply against each of the motions to strike

---

[10]  In its papers below, Boeing argued because the Stacks' complaint sought damages for evacuation expenses, which were incurred on November 9, 2018, the statute of limitations began to run on that date, at least as to those damages if not as to all the Stacks' claims.  Boeing further argued to the extent the Stacks sought personal injury damages arising from their property damage, such as emotional distress and loss of enjoyment, those damage claims are subject to the two-year statute of limitations for personal injury claims as opposed to the three-year statute for property damage claims.  The trial court did not address these arguments, instead ruling in defendants' favor based on its earlier *Dayani* ruling.  Boeing and the other defendants have not reasserted these arguments in their appellate briefing, and thus the Stacks have not addressed them.  At oral argument, however, Boeing and Universal Protection Service attempted to revive them.  We decline to address these unbriefed issues raised for the first time on appeal at oral argument and express no opinion on them. (See *Estate of McDaniel* (2008) 161 Cal.App.4th 458, 463.)

as well as the demurrers." Defendants do not mention the motions to strike in their appellate briefing.

We reverse the grants of the motions to strike. As we have discussed, the Stacks' causes of action subject to the three-year limitations period are timely as alleged, and thus the trial court erred in sustaining the demurrers and granting the motions to strike allegations supporting those causes of action. As for the Public Utilities Code cause of action, the meritorious demurrer moots the motion to strike that claim and its supporting allegations.

## DISPOSITION

The judgments in favor of Southern California Edison Company, Universal Protection Service, L.P., and The Boeing Company are reversed. The trial court is instructed to vacate its order sustaining the demurrers and granting the motions to strike against Brian and Roohi Stack, and to enter a new order 1) sustaining the demurrer to the Stacks' cause of action under Public Utilities Code section 2106; 2) overruling the demurrers to the Stacks' other causes of action; and 3) denying the motions to strike.

The Stacks are awarded their costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.          WEINGART, J.

24